UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEXIS SANTOS,<br><br>                        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>                        Defendant. | Case No. 3:12-cv-05827-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 12, 2010, plaintiff filed an application for disability insurance benefits, alleging

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**
ORDER - 1

disability as of June 1, 2006, due to major depression, hypertension, anxiety, panic attacks, and carpal tunnel syndrome in both hands. See ECF #11, Administrative Record ("AR") 22, 177. That application was denied upon initial administrative review on August 30, 2010 and on reconsideration on January 24, 2011. See AR 22.  A hearing was held before an administrative law judge ("ALJ") on October 24, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 39-71.

In a decision dated January 17, 2012, the ALJ determined plaintiff to be not disabled. See AR 22-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 19, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981.  On September 13, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1.  The administrative record was filed with the Court on December 4, 2012. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

    (1)  in finding plaintiff's hypertension and sleep apnea were not severe impairments;

    (2)  in evaluating the opinions of Gary Gaffield, D.O., James Parker, M.D., and Kristine S. Harrison, Psy.D.;

    (3)  in discounting plaintiff's credibility;

    (4)  in failing to adopt all of the mental limitations found by Michael L. Brown, Ph.D., Patricia Kraft, Ph.D., and Leslie Postovoit, Ph.D., in assessing plaintiff's residual functional capacity ("RFC");

ORDER - 2

    (5)  in failing to resolve the inconsistency between the vocational expert's testimony identifying the jobs of laundry worker, warehouse laborer, mailroom clerk, and office helper that could be performed and the descriptions of those jobs contained in the Dictionary of Occupational Titles ("DOT") with respect to the limitation to simple, repetitive work assessed by the ALJ; and

    (6)  in failing to consider the vocational impact of the need to accommodate plaintiff's use of a service dog.

For the reasons set forth below, the Court agrees the ALJ erred by failing to properly take into consideration all of the mental limitations found by Drs. Brown, Kraft and Postovoit in assessing plaintiff's RFC, by failing to properly consider the vocational impact of plaintiff's use of a service dog, and in finding plaintiff to be capable of performing the job of mailroom clerk.  Also for the reasons set forth below, however, while the ALJ's determination of non-disability thus cannot be upheld as a result of these errors, remand for further administrative proceedings, rather than an outright award of benefits, is warranted.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

ORDER - 3

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.  The ALJ's Evaluation of the Opinions of Drs. Brown, Kraft and Postovoit and Her Assessment of Plaintiff's RFC

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **. . . to perform medium work . . . except he can occasionally climb ladders, ropes, and scaffolds. He is also able to perform frequent handling and fingering with both hands and should avoid concentrated exposure to vibrations and hazards. He is also able to perform simple, repetitive tasks with no public interaction and without a requirement to perform teamwork with co-workers.**

AR 27 (emphasis in original). The ALJ based that RFC assessment in part on the opinions of Dr. Brown, Dr. Kraft and Dr. Postovoit, with respect to which she found:

> State agency psychologist, Michael Brown, Ph.D., opined that the claimant had mild limitations in activities of daily living, moderate limitations in social functioning and concentration, persistence, and pace (Exhibit 8F/11). In interpreting those limitations to an assessment of the claimant's mental residual functional capacity, Dr. Brown found that the claimant was able to remember and execute simple instructions as well as sustain concentration on simple, repetitive tasks (Exhibit 9F/3). Another State agency reviewing consultant, Patricia Kraft, Ph.D., concurred with Dr. Brown's assessment but added that the claimant "can adjust well to introduced changes" (Exhibits 14F/3 and 15F/1). Subsequently, another State agency reviewing consultant, Leslie Postovoit, Ph.D., also concurred with the assessments by Drs. Brown and Kraft (Exhibit 23F/1). After careful consideration, the undersigned accords these opinions significant weight because they are consistent with the overall record, particularly the findings from Dr. [Manfred K.] Joeres demonstrating that the claimant had only moderate symptoms (Exhibit

ORDER - 5

   20F/19).  The undersigned accords less weight to the portions of the State
   agency consultants' indicating mild limitations in social functioning because
   the record demonstrates that the claimant has more limitations as discussed
   above in the section finding that the claimant has moderate limitations in
   social functioning.

AR 30.  Plaintiff argues the ALJ failed to include all of the mental functional limitations found by Drs. Brown, Kraft and Postovoit in her RFC assessment despite according their opinions "significant weight."  The Court agrees.

  As noted above, the ALJ found plaintiff could "**perform simple, repetitive tasks with no public interaction and without a requirement to perform teamwork with co-workers**." AR 27 (emphasis in original).  Those limitations cover most, but not all of the mental functional limitations the above medical sources found.  For example, Dr. Brown opined that plaintiff's mood symptoms "would episodically slow work pace," though he would "still be productive." AR 346.  It is not at all clear that the ability to perform simple, repetitive tasks encompasses – or encompasses adequately – an episodically slow work pace, even with being able to still remain productive.  In addition, Dr. Kraft and Dr. Postovoit opined that plaintiff would be able to "adjust to *well introduced* changes."  AR 404 (emphasis added).  This is not addressed at all by the ALJ in the above RFC assessment.  Lastly, while the ALJ's above social functioning limitations are not inconsistent with the restriction to "routine, simple, social interactions" found by all three medical sources, such a restriction would also appear to impact plaintiff's ability to interact with supervisors, which the ALJ's RFC assessment also does not address.

  The Court rejects, however, plaintiff's assertion that the ALJ was required to include in his RFC assessment – or explain why she did not do so – the specific moderate mental functional limitations Drs. Brown, Kraft and Postovoit checked in Section I of the mental residual functional capacity assessment ("MRFCA") forms they completed.  See AR 344-45, 402-03.

ORDER - 6

This is because pursuant to the Commissioner's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC['].**" POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425 020010 (emphasis in original).  Although the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

Plaintiff opposes reliance on the POMS here based on the following argument:

> The Defendant argued that the ALJ was not required to consider the specific limitations identified by the State Agency doctors in Section I of the report, which is for "recording summary conclusions derived from evidence in the file." ([AR] 344) ([defendant's brief, p.] 10).  Keep in mind, these are **non-examining** medical consultants.  Section I of the report records a summary of the medical evidence that was generated by treating and examining specialists.  The RFC Section III is for the opinions of the non-examiners.  To the extent that the opinions in Section III are inconsistent with the opinions of the examining psychiatrists, they lack foundation.  The opinions of non-examining State Agency doctors are not "substantial evidence" that can be used to reject the opinions examining doctors. Pitzer v. Sullivan, 908 F.2d 505, 506 (9th Cir. 1990).  Thus, the opinions expressed in Section III of the RFC form cannot be used to reject the opinions that they summarized in Section I.  While the non-examining [State Agency] doctors did complete both sections of the RFC form, Section I is based directly on the medical evidence, while Section III is not.  To adopt the limitations in Section III, to the exclusion of those in Section I, is inconsistent with 20 C.F.R. 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

ECF #14, p. 6 (emphasis in original).  While it is true that in general more weight is given to the opinions of those medical sources who have actually examined and/or treated the claimant,[3] the Section I boxes Drs. Brown, Kraft and Postovoit checked do not constitute such evidence, but

---

[3] See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996).

ORDER - 7

merely represent how those three psychologists interpreted it. That is, those checked boxes merely represent the opinions of those three non-examining, consultative medical sources, rather than evidence from treating or examining medical sources warranting greater deference than the narrative statements contained Section III of the MRFCA forms.

II.     The Vocational Impact of Plaintiff's Use of a Service Dog

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 68. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as

ORDER - 8

plaintiff – could perform the jobs of laundry worker (DOT 361.685-018), warehouse laborer (DOT 922.687-058), mailroom clerk (DOT 209.687-026), and office helper (DOT 239.567-010). See AR 68, 70.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 32-33.

Plaintiff argues that in finding plaintiff to be capable of performing the above jobs, the ALJ failed to take into account his use of a service dog.  The Court agrees.  Defendant asserts "[t]here is no credible evidence" in the record that use of a service dog is necessary in order for plaintiff to be able to work. ECF #13, p. 11.  But the record does indicate plaintiff's use of a service dog has been of significant benefit to him in terms of his mental health symptoms. See AR 328 ("panic attacks . . . appear to be fairly well controlled with the help of his service dog"); 458-59 (noting absence of panic attacks and agoraphobia for past 18 months since plaintiff got his service dog).  In addition, while the record further indicates a service dog was not originally prescribed for him (see AR 324), Douglas Green, M.D., subsequently did provide a "letter" for one at plaintiff's request (see AR 448).

As pointed out by plaintiff, furthermore, the vocational expert testified that in regard to the warehouse laborer and laundry worker jobs, having a service dog in the workplace "would probably be an accommodation," and that it would "[n]ot likely [be allowed] in a warehouse or a laundry." AR 69.  Thus, to the extent that plaintiff would be required to have a service dog at work both of those jobs likely would be eliminated.  The vocational expert went on to testify that it was "not impossible to consider the mailroom clerk [job] as a possibility for" use of a service dog, and that "[o]ther work" in that respect "would be something like an office helper" (AR 70), but clearly this testimony is less than conclusive in that regard.  Nor did the vocational expert, as

ORDER - 9

plaintiff also points out, testify as to how many of the mailroom clerk[4] and office helper jobs she identified would accommodate use of a service dog. See id.

Accordingly, there is at least some evidence in the record that plaintiff's use of a service dog is medically necessary. There also is evidence in the record that failure to accommodate the use thereof may have a significant adverse impact on the ability of plaintiff to function mentally, including in the workplace. Such evidence constitutes significant probative evidence that the ALJ should have discussed in her decision, but failed to do. See Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (although ALJ "need not discuss *all* evidence presented," he or she must explain why "significant probative evidence has been rejected.") (citation omitted) (emphasis in original); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984). This failure on the part of the ALJ thus constitutes reversible error.

III.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

---

[4] The Court further agrees with plaintiff that because the DOT describes the job of mailroom clerk as requiring a reasoning level of 3 (see DOT 209.687-026), that job would be eliminated on this basis (see Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)). Accordingly, even if the mailroom clerk job could accommodate the use of a service dog, that job still would be precluded for this reason.

ORDER - 10

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to plaintiff's mental residual functional capacity, as well as his ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 12th day of September, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11